PAGES 1-34

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

THIRD DIMENSION SEMICONDUCTOR, INC.,)
                                     )
                PLAINTIFF,           )
                                     )
  VS.                                ) NO. C 12-02130 EMC
                                     )
ALPHA AND OMEGA SEMICONDUCTOR, INC.,)
ALPHA AND OMEGA SEMICONDUCTOR,       )
LIMITED,                             ) SAN FRANCISCO, CALIFORNIA
                DEFENDANTS.          )  FRIDAY
                                     )  AUGUST 31, 2012
_____)  1:30 O'CLOCK P.M.


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**FOR PLAINTIFF:**          **GCA LAW PARTNERS LLP**
                            1891 LANDINGS DRIVE
                            MOUNTAIN VIEW, CALIFORNIA 94043
                            **BY:  JILL F. KOPEIKIN, ATTORNEY AT LAW**
**AND**
                            **SHORE CHAN BRAGALONE DEPUMPO LLP**
                            901 MAIN STREET
                            SUITE 3300
                            DALLAS, TEXAS 75202
                    **BY:  MICHAEL W. SHORE, ESQUIRE (BY PHONE)**
                         **EVE L. HENSON, ATTORNEY AT LAW (BY PHONE)**
                         **DANIEL F. OLEJKO, ESQUIRE (BY PHONE)**
*REPORTED BY:   KATHERINE WYATT, CSR 9866, RMR, RPR*
            *OFFICIAL REPORTER - US DISTRICT COURT*
            *COMPUTERIZED TRANSCRIPTION BY ECLIPSE*

**FURTHER APPEARANCES:**

**FOR DEFENDANTS:**          **MORGAN, LEWIS & BOCKIUS LLP**

2 PALO ALTO SQUARE
3000 EL CAMINO REAL, SUITE 700
PALO ALTO, CALIFORNIA 94306
**BY:   AHREN C. HSU-HOFFMAN, ESQUIRE**
650-843-4001

AUGUST 31, 2012                          1:30 O'CLOCK  P.M.


                    P R O C E E D I N G S

          THE CLERK:  CALLING CASE C 12-213O, FIRST DIMENSION

VERSUS ALPHA AND OMEGA.

     COUNSEL, PLEASE COME TO THE PODIUM, AND STATE YOUR NAME

FOR THE RECORD.

     (CLERK PLACES CALL.)

          OPERATOR:  MICHAEL SHORES OFFICE.

          THE CLERK:  YES, THIS IS BETTY FROM JUDGE CHEN FOR

MR. SHORE FOR THE HEARING.

          OPERATOR:  HI.  YES.  LET GET HIM ON THE LINE,

MS. LEE.  CAN YOU HOLD ON FOR ONE SECOND?

          THE CLERK:  SURE.

          OPERATOR:  EVE HENSON AND DANIEL OLEJKO ARE ON THE

LINE.

     IS MR. SHAW ON THE LINE?

          THE CLERK:  NO, MR. SHORE IS NOT HERE.  WILL YOU BE

ABLE TO LOCATE HIM?  OTHERWISE, WE HAVE TO GO AHEAD WITH THE

HEARING.

          OPERATOR:  DID HE GET ON THE LINE, MS.  LEE?

          THE CLERK:  NO, MR. SHORE DID NOT GET ON THE LINE.

          OPERATOR:  MS. LEE, DID HE GET ON THE LINE?

          THE CLERK:  HE DID NOT.

     MR. SHORE?

**OPERATOR:** MS. LEE, HE WILL BE ON IN JUST A SECOND.

**THE CLERK:** WE'RE ALL WAITING HERE.

**OPERATOR:** I AM SO SORRY. I APOLOGIZE FOR THE DELAY, BUT HE WILL BE ON IN A SECOND.

MICHAEL SHORE HAS ARRIVED.

**THE CLERK:** MR. SHORE, ARE YOU THERE?

**MR. SHORE (BY PHONE):** YES, MA'AM.

THE COURT REPORTER: MAY I GET YOUR NAME?

**MS. KOPEIKIN:** JILL KOPEIKIN.

**THE CLERK:** OKAY. CALLING C 12-2130, THIRD DIMENSION VERSUS ALPHA AND OMEGA.

COUNSEL, PLEASE STATE YOUR NAME FOR THE RECORD.

**MR. SHORE (BY PHONE):** MICHAEL SHORE FOR 3D.

**THE COURT:** THANK YOU, MR. SHORE.  THIS IS JUDGE CHEN.

**MR. SHORE (BY PHONE):** HELLO, JUDGE CHEN.  NICE TO MEET YOU.

**THE COURT:** NICE TO MEET YOU.

AND COUNSEL HERE, GO AHEAD.

**MR. HSU-HOFFMAN:** AHREN HSU-HOFFMAN FOR THE DEFENDANTS ALPHA AND OMEGA SEMICONDUCTOR, INC., AND ALPHA AND OMEGA SEMICONDUCTOR LIMITED.

**MS. KOPEIKIN:** AND I BELIEVE THE REPORTER HAS ALREADY GOT MY APPEARANCE.  JILL KOPEIKIN ON BEHALF OF PLAINTIFF THIRD DIMENSION.

**THE COURT:**  ALL RIGHT.  WE'RE ON FOR PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIM AND STRIKE THE DEFENDANTS' AFFIRMATIVE DEFENSES.

SO, YOU KNOW, WE'RE CONFRONTED NOW WITH WHAT SEEMS TO BE A PERENNIAL PROBLEM NOW OF TRYING TO UNDERSTAND EXACTLY WHAT THE PLEADING REQUIREMENTS ARE IN LIGHT OF TWOMBLY AND IQBAL AND IN LIGHT OF THE FORM OF THAT HAVE BEEN APPROVED, FORM 18, BUT ALSO NOW IN LIGHT OF THE FEDERAL CIRCUIT'S DECISION IN BILL OF LADING.

SO LET ME TELL YOU WHAT MY TAKE IS.  AND THIS WOULD APPLY WHETHER IT IS A COUNTERCLAIM OR AN AFFIRMATIVE DEFENSE.  IT DOES SEEM TO ME THAT WHERE THE DEFENSE OR COUNTERCLAIM HINGES TO SOME DEGREE ON THE NATURE OF THE INFRINGEMENT CLAIM -- SO, FOR INSTANCE, A CLAIM FOR DECLARATORY RELIEF FOR NONINFRINGEMENT -- AS I'VE SAID BEFORE WHAT'S SORT OF GOOD FOR THE GOOSE IS GOOD FOR THE GANDER IN ANOTHER CASE, AND THAT IS I DON'T KNOW HOW YOU CAN EXPECT A RESPONSE IF UNDER BILL OF LADING THE INFRINGEMENT CLAIM ITSELF DOES NOT REQUIRE A LOT OF SPECIFICITY IN VIEW OF THE BILL OF LADING CASE.

AND SO MY INCLINATION IS THAT, YOU KNOW -- IS THAT THERE OUGHT TO BE SYMMETRY HERE, BECAUSE YOU CAN'T EXPECT A FULLY INFORMED COUNTERCLAIM FOR A DECLARATION OF NONINFRINGEMENT OR AN AFFIRMATIVE DEFENSE ON SOME OTHER BASIS THAT DEPENDS, IN PART, UPON THE SPECIFICS OF THE INFRINGEMENT CLAIM.

TO THE EXTENT THAT THERE ARE EITHER COUNTERCLAIMS OR

AFFIRMATIVE DEFENSES THAT CAN EXIST INDEPENDENT, SUCH AS PERHAPS, LACHES, FAILURE TO MARK, MAYBE EQUITABLE ESTOPPEL, I'M NOT SURE, THERE'S NO IMPEDIMENT THERE.  AND IF THERE'S NO IMPEDIMENT RESULTING FROM THE GENERALNESS THAT IS ALLOWED FOR THE INFRINGEMENT CLAIM, THEN I DON'T SEE ANY EXCUSE WHY EITHER THE COUNTERCLAIM OR THE AFFIRMATIVE DEFENSE THAT IS NOT DEPENDENT UPON THAT INFRINGEMENT CLAIM, WHY THAT SHOULD BE EXCUSED FROM THE NORMAL SPECIFICITY REQUIREMENTS, PARTICULARLY SINCE WE DON'T HAVE A FORM 18 AT PLAY.

SO THAT'S MY GENERAL TAKE ON HOW TO ANALYZE THIS SHORT OF SOME MORE GUIDANCE COMING FROM EITHER THE FEDERAL CIRCUIT OR THE SUPREME COURT.

AND SO I'D LIKE TO HEAR YOUR RESPONSE TO THAT. AND IF WE'RE GOING DOWN THAT DIRECTION, WHAT DOES THAT MEAN IN THIS CASE?  WHICH DEFENSES, WHICH CLAIMS SORT OF FALL ON ONE SIDE OF THE LEDGER AND WHICH DON'T?  NAMELY, DEPENDENCY UPON THE SPECIFICS OF THE INFRINGEMENT CLAIM OR CLAIMS.

**MR. SHORE (BY PHONE):**  YOUR HONOR, WOULD YOU LIKE TO HEAR FROM 3D FIRST?

**THE COURT:**  SURE.

**MR. SHORE (BY PHONE):**  I GUESS WE'RE THE ONES WHO HAD THE COMPLAINT.

I COMPLETELY SEE YOUR POINT. THERE HAS TO BE OR YOU WOULD THINK THERE WOULD HAVE TO BE SOME LEVEL OF AN EQUITABLE ARGUMENT THAT SOMEONE SHOULD NOT HAVE TO RESPOND ON

NONINFRINGEMENT IF THE INFRINGEMENT ALLEGATIONS ARE NOT VERY SPECIFIC, EVEN IF THE INFRINGEMENT ALLEGATIONS HAVE A FORM 18 AND THE NONINFRINGEMENT ALLEGATIONS DON'T.

THOSE ARE, FRANKLY, NOT THE -- ALTHOUGH IT WOULD BE NICE TO HAVE SLIGHTLY MORE OR SOME, ANY DETAIL ON THE NONINFRINGEMENT ARGUMENTS, THAT'S NOT REALLY THE PURPOSE OF THE MOTION.

THE FOCUS OF THE MOTION MORE GOES TO THE OTHER AFFIRMATIVE DEFENSES.  SO IF THEY DON'T HAVE TO REPLEAD OR ADD ANYTHING TO THE NONINFRINGEMENT PART, IT'S NOT GOING TO CAUSE ME ANY ANXIETY IN PREPARING MY CASE.

THAT'S NOT TRUE FOR INVALIDITY. ESPECIALLY WHEN, YOU KNOW, WHAT WE HAVE IN INVALIDITY IS YOU HAVE LOTS OF DIFFERENT INVALIDITY DEFENSES NOWADAYS THAT PEOPLE RAISE, YOU KNOW, 101, 112, 103, 102A, YOU KNOW, 102G.  I MEAN, IT GOES ON AND ON.

SO, YOU KNOW, I WOULD THINK THAT AT THE VERY LEAST IF IT'S A NONART-RELATED, FOR INSTANCE A PRIOR ON-SALE BAR, THEY WOULD HAVE TO SAY, YOU KNOW:

"WE ALLEGE UNDER RULE 102G," OR WHATEVER IT MIGHT BE "THAT WE HAD A PRODUCT FOR SALE ON THIS DATE, WHICH PREDATES THE DATE, YOUR PRIORITY DATE FOR YOUR PATENT."

YOU KNOW, IF THEY DON'T -- AND WE NAMED 204 PARTS IN OUR COMPLAINT.

SO IF THEY ARE GOING TO HAVE AN ALLEGATION AND AN AFFIRMATIVE DEFENSE, I MEAN RULE 11 DOES APPLY TO

COUNTERCLAIMS.  AND RULE 11 DOES APPLY TO AFFIRMATIVE DEFENSES. AND SO 60 PERCENT NOW OF MY PRACTICE IS DEFENSE, AND I WOULD NEVER IN MY LIFE MAKE AN INVALIDITY DEFENSE WITHOUT HAVING THE PRIOR ART IDENTIFIED, HAVING IT CHARTED AND KNOWING WHAT SECTIONS OF THE CODE I WAS GOING TO RELY UPON TO INVALIDATE THE SPECIFIC CLAIMS THAT WE'RE CLAIMING TO BE INVALID.

I DON'T WANT A CLAIM CHART, NOT YET AT THAT TIME. BUT THEY OUGHT TO BE ABLE TO SAY:

"CLAIMS ONE" -- AND LET'S SAY -- "DEPENDENT CLAIMS TWO THROUGH NINE ARE INVALID UNDER 102A, ACCORDING TO THIS PIECE OF ART."

THEY DON'T HAVE TO CHART IT. BUT I OUGHT TO BE ABLE TO LOOK AT THAT AND SAY:

"OKAY.  THEY DID THEIR RULE 11 INVESTIGATION.  THEY FOUND A 102A PIECE OF ART.  THEY PLED IT.  AND NOW I CAN EVALUATE AND ASSESS WHETHER OR NOT THAT DEFENSE IS MERITORIOUS OR NOT, WHETHER I WANT TO DENY IT OR NOT DENY IT, WHETHER I WANT TO DROP THAT PATENT OR NOT DROP THAT PATENT."

I DON'T NEED THEM TO DO ANY MORE WORK FOR ME THAN BASICALLY TELL ME:

"I DID MY RULE 11 INVESTIGATION.  I HAVE A GOOD FAITH BASIS TO THAT THIS IS INVALID UNDER 102A.  AND HERE'S THE PIECE OF ART THAT IT'S INVALID."

THAT'S IT.  FOR SOMETHING LIKE PROSECUTION LACHES, WHICH

THEY HAVE ALSO PLED IN THIS CASE -- NOW, PROSECUTION LACHES IS A VERY FACT-SPECIFIC DEFENSE. AND I FIND IT VERY INCONCEIVABLE THAT THEY COULD HAVE DONE A RULE 11 INVESTIGATION GOING BACK TO PATENTS THAT ARE PROSECUTED SINCE 1993, AND GONE THROUGH ALL THE PTO OFFICE ACTIONS, RESPONSES, OFFICE ACTIONS AND EVERYTHING ELSE, TO CREATE A VIABLE DEFENSE UNDER PROSECUTION LACHES WITHIN THE PERIOD OF TIME THEY HAD THE LAWSUIT BEFORE THEY FILED THAT CLAIM.

THAT IS DISTURBING TO ME, BECAUSE PROSECUTION LACHES IS AN INCREDIBLY FACT-INTENSIVE AFFIRMATIVE DEFENSE. AND TO PLEAD PROSECUTION LACHES YOU'VE GOT TO BE ABLE TO KNOW -- AT THE TIME THEY MADE THAT AFFIRMATIVE DEFENSE THEY HAD TO KNOW THIS CLAIM WAS NOT DONE.  THIS CLAIM WAS ABANDONED.  THIS CLAIM WAS RE -- YOU KNOW, RAISED AGAIN LATER IN PROSECUTION. IT COULD HAVE BEEN PROSECUTED AS OF THIS DATE, AND IT WASN'T.  AND IT WASN'T FOR AN IMPROPER REASON.

THERE'S NO WAY THEY DID THAT. AND THEY THREW THAT IN AS A KITCHEN SINK DEFENSE. THAT'S NOT PROPER.

LACHES ITSELF -- THEY HAVE ONLY BEEN MAKING THESE PARTS AND SELLING THESE PARTS FOR LESS THAN THREE YEARS. SO HOW THEY CAN HAVE A LACHES DEFENSE IN THIS CASE IS BEYOND ME.

BUT, AGAIN, IT'S A KITCHEN SINK DEFENSE THAT THEY JUST THROW IN.  BUT IF THERE ARE SPECIFIC FACTS THAT WOULD GIVE RISE TO LACHES FOR A COMPANY THAT HAS BEEN MAKING PARTS FOR LESS THAN THREE YEARS, I KNOW, I'D BE REALLY INTERESTED IN TRYING TO

FIGURE OUT WHAT THOSE FACTS ARE.  AND THEY, AGAIN, SHOULD KNOW THEM. THEY PLED THE DEFENSE.

SO I THINK WHAT WE HAVE HERE, YOU KNOW, WE HAVE LIMITED INTERROGATORIES. WE HAVE LIMITED REQUESTS FOR PRODUCTION.  WE HAVE LIMITED DISCOVERY OPPORTUNITIES.  AND WHEN THEY JUST THROW IN THE KITCHEN SINK OF DEFENSES, IT PUTS US AT A HUGE DISADVANTAGE IN TRYING TO EVALUATE THE MERITS OF WHAT THEY ARE DOING.

SO ON INFRINGEMENT I AGREE WITH YOUR HONOR. ON INFRINGEMENT I DON'T THINK IT'S FAIR.  WHETHER OR NOT IT'S PROPER UNDER THE RULES OR NOT IS A DIFFERENT STORY.  BUT I DON'T THINK IT'S FAIR TO FORCE THEM TO BE TOO SPECIFIC ON THEIR NONINFRINGEMENT CASE UNTIL WE GIVE THEM CLAIM CHARTS, WHICH, BY THE WAY, WE HAVE OFFERED TO GIVE THEM CLAIM CHARTS AND SIT DOWN WITH THEM AND GO OVER OUR INFRINGEMENT POSITION IN DETAIL. WE'VE OFFERED THEM THAT REPEATEDLY.

WE OFFERED THEM THAT AGAIN LAST WEEK, OR EARLIER THIS WEEK, AT THE ADR CONFERENCE.

BUT I THINK FOR ALL OF THOSE OTHER DEFENSES, YOU KNOW, WE'RE ENTITLED TO SEE AT A MINIMUM THAT THEY MET RULE 11, THAT THERE'S SOMETHING THERE AND THAT THIS ISN'T JUST A KITCHEN SINK, THROW IT IN AND PUT US TO A BUNCH OF WORK UNNECESSARILY.

**THE COURT:**  ALL RIGHT.  WHAT'S YOUR RESPONSE TO THAT, MR. HSU-HOFFMAN?

**MR. HSU-HOFFMAN:**  YOUR HONOR, AS A FIRM AND AN

ATTORNEY, AND ONE THAT'S BEEN DOING THIS FOR A LONG TIME, I TAKE THE RULE 11 ALLEGATIONS AND THE CHARGES THAT MR. SHORE JUST MADE VERY SERIOUSLY.

I CAN ASSURE THE COURT THAT THE ALLEGATIONS IN OUR ANSWER AND COUNTERCLAIMS IS THE RESULT OF ANALYSIS -- EXCUSE ME -- IS THE CONCLUSION OF ANALYSIS AND NOT THE ANALYSIS ITSELF.

WITH RESPECT TO -- I WILL START WITH THE INVALIDITY COUNTERCLAIM.  WE BELIEVE THIS IS DIRECTLY TIED TO THEIR INFRINGEMENT CONTENTIONS, BECAUSE INVALIDITY ENDS UP BEING A VERY CLAIM SPECIFIC INQUIRY.

**THE COURT:**  YES, BUT WHICH ASPECT OF INVALIDITY?

**MR. HSU-HOFFMAN:**  FOR EXAMPLE, ANY ONE 102 ANALYSIS WOULD BE, YOU KNOW, LOOKING AT A SPECIFIC CLAIM. BEFORE WE'RE ABLE TO KNOW EXACTLY WHICH CLAIMS IN THIS CASE THAT THEY ARE, YOU KNOW, SETTING FORTH, I MEAN WE'D HAVE TO GO THROUGH IN THE COMPLAINT EACH AND EVERY SINGLE -- EACH AND EVERY SINGLE CLAIM TO -- YOU KNOW, BEFORE THEY HAVE ACTUALLY NARROWED DOWN THEIR CONTENTIONS AND WE'VE FIGURED OUT WHAT THE CASE IS ABOUT.

WITH RESPECT TO THE ANALYSIS THAT IS UNDERLYING THE INVALIDITY COUNTERCLAIMS, AOS HAS BEEN MAKING MOSFET PRODUCTS SINCE 2000.  AND THEY HAVE ESSENTIALLY IN THIS CASE CHARGED -- ACCUSED OUR ENTIRE LINE OF MOSFET PRODUCTS OF INFRINGEMENT.

WE BELIEVE THAT THERE IS NO BASIS FOR THAT. A LOT OF THESE PRODUCTS ARE BASED ON PRIOR ART DESIGNS. WITH RESPECT TO -- WITH RESPECT TO WHAT THEIR SUIT IS ABOUT, ONE OF THE PATENTS

THEY HAVE ASSERTED IN THIS CASE, THE '275 PATENT, WENT UP TO THE FEDERAL CIRCUIT. FEDERAL CIRCUIT AFFIRMED NO INFRINGEMENT OF THAT PATENT BY ANOTHER COMPANY, INFINEON.

IN THIS CASE, MR. SHORE HAS INDICATED TO US THAT AOS' PRODUCTS ARE JUST LIKE INFINEON'S. ON THAT BASIS WE DON'T UNDERSTAND HOW THERE COULD POSSIBLY BE INFRINGEMENT OF THAT PATENT.

**THE COURT:**  WELL, OKAY. AND THAT ISSUE IS GOING TO BE LITIGATED.

MY QUESTION NOW, YOU'VE ALREADY HEARD FROM THE OTHER SIDE THAT THEY ARE NOT GOING TO PUSH FOR ANY GREATER DEGREE OF SPECIFICITY ON YOUR COUNTERCLAIMS OR ASSERTION OF NONINFRINGEMENT, WHICH YOU'VE JUST -- I'M INTERESTED IN YOUR RESPONSE TO HIS ASSERTION THAT WITH RESPECT TO INVALIDITY CLAIMS THAT THERE OUGHT TO BE A LEVEL OF SPECIFICITY HERE THAT EXCEEDS THE KIND OF FORM 18 SPECIFICITY AND SOME EXPLANATION, WHETHER IT'S PROSECUTION LACHES OR ASSERTION OF PRIOR ART, ET CETERA, ET CETERA.

WHAT'S YOUR RESPONSE TO THAT?

**MR. HSU-HOFFMAN:**  I BELIEVE YOUR HONOR GOT IT RIGHT, EXACTLY RIGHT IN THE WISTRON CASE.  AND THAT WAS WITH RESPECT TO THE EARLY DISCLOSURES THAT COME THROUGH THE PATENT LOCAL RULE 3-3 DISCLOSURES WHERE WE ACTUALLY PROVIDE VERY DETAILED INVALIDITY CONTENTIONS IN TERMS OF -- YOU KNOW, WE FEEL THAT'S THE PROPER WAY TO FLESH THOSE CONTENTIONS OUT IN THIS CASE,

VERSUS AT THE PLEADING STAGE BEFORE WE KNOW EXACTLY WHAT CLAIMS ARE AT ISSUE AND WHAT THEIR INFRINGEMENT THEORIES ARE.

AGAIN, WE THINK THE INFRINGEMENT THEORIES ARE A LARGE DRIVER OF WHAT, YOU KNOW, WHAT PRIOR ART'S GOING TO BE IMPLICATED IN THOSE 3-3 DISCLOSURES AND THE BEST AND MOST EFFICIENT WAY TO FLESH THAT OUT RATHER THAN THROUGH CONSTANT AMENDMENTS TO THE COUNTERCLAIMS WOULD BE JUST TO COMPLY WITH THE PATENT LOCAL RULES IN THIS CASE.

**THE COURT:** ALL RIGHT. WHAT ABOUT THAT, MR. SHORE?  I MEAN, ESPECIALLY IN THIS DISTRICT WE DO HAVE A STRUCTURED SEQUENCE OF THINGS, AND INVALIDITY CONTENTIONS FOLLOW INFRINGEMENT CONTENTIONS.

**MR. SHORE (BY PHONE):** WELL --

**THE COURT:** THAT'S THE WAY THINGS ARE DONE NORMALLY.

**MR. SHORE (BY PHONE):** WELL, YOUR HONOR, A FEW THINGS. FIRST, THEY HAVE THROWN IN THE KITCHEN SINK OF VALIDITY.

THEY HAVEN'T JUST SAID THAT IT'S INVALID BASED UPON PRIOR ART. THEY SAID IT'S INVALID UNDER EVERY POSSIBLE -- IT'S NOT NOVEL.  IT'S NOT USEFUL UNDER 112. EVERY KITCHEN SINK INVALIDITY DEFENSE GOT THROWN IN HERE BECAUSE THEY BASICALLY REFERENCE EVERY INVALIDITY DEFENSE UNDER CHAPTER 35.

SO THERE'S NOTHING THAT WE'RE GOING TO BE ABLE TO PUT INTO AN INFRINGEMENT CONTENTION THAT IS GOING TO TELL THEM WHETHER OR NOT THIS IS NOVEL.

THERE'S NOTHING THAT WE'RE GOING TO PUT IN AN INFRINGEMENT CONTENTION THAT IS GOING TO ADDRESS 112.  THERE'S NOTHING THAT WE'RE GOING TO PUT INTO AN INFRINGEMENT CONTENTION THAT'S GOING TO ADDRESS AN ON-SALE BAR.

THIS IS THE -- LITERALLY THE KITCHEN SINK:

"WE RESERVE OUR RIGHTS TO CLAIM ANYTHING AT ANY TIME AT ANY PLACE."

SO THE IDEA THAT THEY NEED OUR -- WHY WOULD YOU NEED INFRINGEMENT CONTENTIONS TO PROVE THAT SOMETHING WAS INVALID BASED ON PRIOR ART?

THE OTHER THING HE TOLD YOU --

**THE COURT:**  HOLD ON.  LET'S JUST THAT THAT ONE THERE, ALL RIGHT?

WHAT'S YOUR RESPONSE TO THAT?  WHY DO YOU NEED INFRINGEMENT CONTENTIONS IN ORDER TO IDENTIFY YOUR PRIOR ART CONTENTION?

**MR. HSU-HOFFMAN:**  AT THE MOMENT -- AT THE MOMENT THERE ARE, AS MR. SHORE INDICATED, OVER 200 PRODUCTS THAT HAVE BEEN ACCUSED OF INFRINGEMENT.

THE WAY THEY READ THEIR -- THE WAY THEY READ THEIR CLAIMS AND WHAT PROVIDE THEIR -- THE INFRINGEMENT CONTENTION ANALYSIS WOULD AFFECT WHETHER CERTAIN PRIOR ART ESSENTIALLY ENDS UP BEING APPLICABLE TO OUR -- YOU KNOW, ENDS UP BEING DIRECTLY RESPONSIVE TO THEIR INFRINGEMENT THEORIES.

IF THEY ARE ASSERTING THE CLAIMS AGAINST PRODUCTS THAT

UTILIZE PRIOR ART DESIGNS, WE WOULD BELIEVE THAT WOULD OPEN A WHOLE NEW LINE OF PRIOR ART THAT WOULD THEN BE ABLE TO -- YOU KNOW, WE'D BE ABLE TO RELY ON IN THIS CASE.

**THE COURT:**  AND, INDEED, MR. SHORE, ISN'T THAT WHY LOCAL RULE 3-3 PROVIDES FOR DISCLOSURE OF INVALIDITY CONTENTIONS 45 DAYS AFTER SERVICE OF THE INFRINGEMENT CONTENTIONS?  THAT OFTEN THE INVALIDITY CONTENTIONS MAY TURN, IN PART, UPON WHAT IS DISCLOSED WITH RESPECT TO THE INFRINGEMENT CONTENTIONS?

**MR. SHORE (BY PHONE):**  NO, YOUR HONOR.  THERE'S NOTHING I CAN PUT IN MY INFRINGEMENT CONTENTIONS THAT IS GOING TO CHANGE THE LEGAL MEANING OF THE PATENT TERMS OR THE LEGAL MEANING OF WHAT A PERSON OF ORDINARY SKILL IN THE ART WOULD INTERPRET PRIOR ART.

I MEAN, THAT'S -- AND IF THE WHOLE PURPOSE OF THE PATENT SYSTEM IS NOTICE TO THE PUBLIC, AND THEY HAVE TO FIND OUT WHAT I THINK THEIR PARTS -- HOW I THINK THEIR PARTS INFRINGE MY PATENT IN ORDER TO HAVE NOTICE OF WHAT OTHER ART MEANS AS APPLIED TO THIS PATENT, THAT TURNS THE WHOLE IDEA OF THE PATENT SYSTEM ON ITS HEAD.  IT'S COMPLETELY ILLOGICAL.

AND THE SECOND THING HE POINTED OUT THAT IS JUST NOT TRUE, THERE'S 204 PART NUMBERS. HOW THIS INDUSTRY WORKS -- AND, BY THE WAY, THE ONLY PARTS BEING ACCUSED ARE WHAT ARE KNOWN AS "SUPER JUNCTION MOSFET TECHNOLOGY."

SUPER JUNCTION MOSFET TECHNOLOGY," WHICH WAS INVENTED IN

1993 BY OUR INVENTOR, AND WAS FIRST COMMERCIALIZED IN 1998 BY INFINEON.  AND THEY HAVE ONLY BEEN MAKING THOSE PARTS FOR THREE YEARS THAT I KNOW OF.

I MEAN, THEY CERTAINLY HAVEN'T BEEN FOR SALE PUBLICLY EXCEPT FOR THE LAST THREE YEARS, SINCE 2000 -- ACTUALLY 2010, I BELIEVE, IS WHEN A AND O STARTED SELLING THESE PARTS.

THE REASON WHY THERE'S 204 PART NUMBERS IS NOT BECAUSE THERE'S 204 DESIGNS.  THERE'S 204 PART NUMBERS BECAUSE THE EXACT SAME WAFERS, THE EXACT SAME DIE ARE PUT INTO MULTIPLE DIFFERENT PACKAGING COMBINATIONS.

THE PACKAGING COMBINATIONS ARE NOT AT ISSUE IN THIS CASE. WHAT'S AT ISSUE IN THE CASE IS THE FUNDAMENTAL DIE STRUCTURE OF ACTUALLY WHAT IS ON THE SILICON WAFER. AND SO WHAT YOU END UP WITH IS YOU MAY HAVE ONE WAFER THAT -- ABOUT EACH WAFER PRODUCES ABOUT 300 -- WELL, ABOUT 3,000 DIE, DEPENDING UPON THE SIZE OF THE WAFER.  THOSE 3,000 DIE ARE EXACTLY THE SAME.  THEY MAY END UP IN 15, 20, 30, 40, 50 PACKAGES FOR DIFFERENT CUSTOMERS.

BUT WHAT IS AT ISSUE IS GOING TO BE PROBABLY ABOUT FIVE TO SEVEN, MAYBE NINE AT THE OUTSIDE, DIFFERENT DIE.  AND THE DIFFERENCES IN THOSE DIE ARE GOING TO BE VERY, VERY MINIMAL DEPENDING UPON WHETHER YOU HAVE A 400, 600 OR 900-VOLT PART.

SO, IN OTHER WORDS, THE ONE LITTLE FEATURE MAY BE DIFFERENT TO BLOCK THAT AMOUNT OF VOLTAGE COMPARED TO A DIFFERENT AMOUNT OF VOLTAGE.

SO THIS IS NOT A 204-PART CASE.  THAT IS JUST RIDICULOUS. IT'S PROBABLY A FIVE TO SEVEN PART CASE AND LOT OF DIFFERENT PACKAGING COMBINATIONS AND PIN COMBINATIONS.  SO LET'S GET THAT OUT OF THE WAY.

**MR. HSU-HOFFMAN:**  YOUR HONOR --

**MR. SHORE (BY PHONE):**  SO WHAT IT COMES DOWN TO IS THEY CLAIM EVERY SINGLE PATENT IS INVALID.  EVERY SINGLE CLAIM OF EVERY SINGLE PATENT IS INVALID. THAT'S WHAT THEY SAID IN THEIR --

**THE COURT:**  AND THEY WILL HAVE TO BACK THAT UP WITH THEIR RULE 3-3 CONTENTION DISCLOSURES.

**MR. SHORE (BY PHONE):**  THEY WILL. BUT THE RULE 3-3 DISCLOSURES DON'T COVER ALL OF THE OTHER FORMS OF INVALIDITY. AND THEY SHOULD, IF THEY REALLY DID A RULE 11 INVESTIGATION, THEY SHOULD ALREADY HAVE ALL THE ART THAT INVALIDATES, OR ELSE THEY COULD NOT MAKE THAT ALLEGATION.

**MR. OLEJKO (BY PHONE):**  YOUR HONOR, THIS IS DAN OLEJKO ON BEHALF OF THIRD DIMENSION.  I JUST WANTED TO ADD TO WHAT MICHAEL SHORE'S COMMENTS, IF I CAN.

**THE COURT:**  GO AHEAD.

**MR. OLEJKO (BY PHONE):**  I JUST WANTED TO ADD THAT AS THIRD DIMENSION NOTED IN ITS REPLY BRIEF IN SECTION FIVE THAT THE SUPREME COURT HAS ADDRESSED THIS ISSUE IN BOTH IQBAL AND TWOMBLY AND HAS STATED CLEARLY THAT A COURT'S CAREFUL CASE MANAGEMENT, I.E. THROUGH DISCOVERY ORDERS, CANNOT MAKE UP FOR

THE RULE EIGHT STANDARDS.

**MR. SHORE (BY PHONE):**  I MEAN, THAT'S JUST THE SUPREME COURT SAYING YOU CAN'T FIRE THE GUN, YOU KNOW.  YOU CAN'T SHOOT FIRST AND SAY YOU AIMED LATER AND NOT TAKE RESPONSIBILITY.

I THINK WHAT -- YOU KNOW, IF NOTHING ELSE, I WOULD LOVE TO SEE JUST A LIST. THEY DON'T EVEN TO HAVE SAY WHETHER IT'S 102, 103, OR WHATEVER ART.  LET'S SEE THE ART THEY HAD ON THE DAY THAT THEY ALLEGED EVERY SINGLE IN EVERY SINGLE PATENT WAS INVALID.

AND THE SAME PATENT THAT WENT UP TO THE FEDERAL CIRCUIT THAT THEY JUST TALKED ABOUT AS BEING NONINFRINGED BY ANOTHER COMPANY'S PARTS, YOU KNOW, NINE YEARS AGO, THE FEDERAL CIRCUIT ALSO SAID EVERY SINGLE CLAIM OF THAT PATENT WAS VALID DESPITE BAKER BOTTS, SIDLEY AUSTIN, THOMPSON AND KNIGHT AND EVERYBODY ELSE AT THE TIME THROWING DOZENS AND DOZENS OF ART COMBINATIONS AND PIECES OF ART AT IT.

SO WHATEVER ART COMBINATIONS AND PIECES OF ART THEY HAVE COME UP WITH, IT HAS TO BE SOMETHING THAT THE FEDERAL CIRCUIT HASN'T ALREADY SAID SEVEN YEARS AGO THE PATENT IS VALID. AND I DON'T THINK THEY DID IT.

**THE COURT:**  WELL --

**MR. SHORE (BY PHONE):**  THEY THREW IN THE KITCHEN SINK.

**THE COURT:**  -- LET ME ASK YOU -- I'M NOT GOING TO

OBVIOUSLY ADJUDICATE VALIDITY AT THIS POINT.  BUT IF THEY WERE TO PROVIDE YOU TOMORROW IN COMPLIANCE WITH RULE 3-3 WITH THEIR COMPLETE INVALIDITY CONTENTIONS, WHICH, OF COURSE, REQUIRES DISCLOSURE OF PRIOR ART, WHAT WOULD YOU BE LACKING?  THAT'S WHAT I WANT TO KNOW.

MR. SHORE (BY PHONE):  I WOULD BE LACKING ON PRIOR ON-SALE BAR.

HE JUST SAID THAT HE THINKS THEY WERE SELLING THINGS AS EARLY AS 2000, WHICH I KNOW IS INCORRECT. YOU SO IF IT'S A PRIOR ON-SALE BAR, WHO DID THEY SELL IT TO?  WHEN DID THEY SELL IT?  AND WHICH OF THE PATENTS WOULD THAT INVALIDATE?

IF IT'S A 112 DEFENSE OR IF IT'S A 101 DEFENSE, I'D LIKE TO SEE THE ALLEGATIONS THAT WOULD BACK THAT.

ON THE PROSECUTION HISTORY ESTOPPEL, WHAT WAS DONE DURING THE PROSECUTION THAT THEY BELIEVE CREATED AN ESTOPPEL?  IF THERE'S AN EQUITABLE ESTOPPEL -- I DON'T EVEN KNOW WHAT THAT MEANS IN THE CONTEXT OF THIS CASE -- WHAT ARE THE FACTS, THE BARE FACTS THAT GIVE RISE TO THE EQUITABLE ESTOPPEL?

THEY MADE A MARKING, FAILURE TO MARK ALLEGATION.  3D DOES NOT MAKE PARTS.  THEY HAVEN'T MADE PARTS SINCE 2004, 2005. AND THE PARTS THEY MADE WERE LOW VOLTAGE PARTS THAT DID NOT -- WERE NOT COVERED BY THESE PATENTS.

SO I WOULD LIKE TO KNOW HOW, IF THEY DON'T MAKE PARTS AND HAVEN'T MADE PARTS OF THIS KIND, WHY IS THERE A FAILURE TO MARK?

I MEAN, WE'RE NOT JUST TALKING ABOUT 103 COMBINATIONS AND 102A ANTICIPATION OR 102B.  WE'RE TALKING ABOUT THEY THREW OUT THE ENTIRE CHAPTER 35, PLUS EQUITABLE ESTOPPEL, PLUS PROSECUTION HISTORY -- PROSECUTION LACHES, PLUS LACHES ITSELF, WITH NOTHING TO BACK IT UP.

**THE COURT:**  ALL RIGHT.

WELL, LET ME ASK YOU, MR. HOFFMAN, YOU RELY ON OUR PATENT LOCAL RULES AND SAY DISCLOSURES ARE PRESCRIBED IN AN ORDERLY WAY, AND THEREFORE THERE SHOULD NOT BE ANY GREATER SPECIFICITY REQUIRED AT THIS POINT.

**MR. HSU-HOFFMAN:**  YES, YOUR HONOR.

**THE COURT:**  MR. SHORE HAS COME UP WITH A NUMBER OF YOUR ASSERTED DEFENSES, I BELIEVE, THAT WOULD NOT BE -- HE SAYS WOULD NOT BE INFORMED BY THE INVALIDITY CONTENTIONS. WHAT'S YOUR RESPONSE TO THAT?

**MR. HSU-HOFFMAN:**  OUR RESPONSE, YOUR HONOR, IS WE WERE RESPONDING TO THE ALLEGATIONS IN THE COMPLAINT.  AND THERE'S A LIST OF OVER 200 AOS PARTS IN THE COMPLAINT.

AOS WAS INCORPORATED BACK IN 2000. THESE PARTS ARE -- HAVE DIFFERENT DESIGNS. IF YOU -- YOU KNOW, IF YOU WANT TO -- WE DON'T SEE HOW THEY CAN READ THE PATENTS ONTO THOSE PRODUCTS, BUT WITH RESPECT TO --  WITH RESPECT TO MR. SHORE'S CONTENTION THAT THIS IS ABOUT A SUBSET OF PRODUCTS THAT AOS JUST BEGAN SELLING, THAT IS NOT REFLECTED IN THE COMPLAINT.

THEY HAVE A PATENT -- WITH RESPECT TO LACHES, THEY HAVE A

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR  925-212-5224

PATENT THAT EXPIRED LAST YEAR.  IT ISSUED IN '93. THEY ASSERTED IT BACK IN 2000 --

**THE COURT:**  RIGHT.  SO WHY -- SO THE QUESTION HERE -- YOU ALL KEEP TRYING TO GET TO THE MERITS.  I'M ASKING FOR A PLEADING QUESTION. WHY CAN'T YOU -- WHAT YOU JUST SAID, THAT'S AN EXAMPLE OF WHY CAN'T YOU ALLEGE WITH SOME GREATER DEGREE OF SPECIFICITY WHAT YOU KNOW NOW?  TO THE EXTENT YOU SAY:

"WELL, 3-3 COVERED MY OBLIGATIONS.  DON'T ADVANCE. THAT PREMATURELY."  THE RESPONSE IS:

"WELL, 3-3 COVERS A NUMBER OF INVALIDITY, YOU KNOW, ARGUMENTS, INCLUDING THOSE THAT TURN ON PRIOR ART WHERE IT DOESN'T -- ARGUABLY DOESN'T REACH EVERYTHING ELSE."

SO THOSE MATTERS THAT ARE NOT COVERED AND WILL NOT BE TOTALLY FORECLOSED OR DISCLOSED BY WAY OF THE INVALIDLY CONTENTIONS, WHY SHOULDN'T YOU BE REQUIRED TO MAKE GREATER DISCLOSURES WITH SPECIFICITY?

**MR. HSU-HOFFMAN:**  THIS IS -- I THINK YOU'RE GETTING AT THE LACHES DEFENSE.

**THE COURT:**  WELL, HE SAYS HE HAS A NUMBER OF THINGS: EQUITABLE ESTOPPEL, FAILURE TO MARK --

**MR. SHORE (BY PHONE):**  PROSECUTION LACHES.

**THE COURT:**  PROSECUTION LACHES, JUST TO NAME THREE OR FOUR. WHY NOT -- AND YOU SAY YOU'VE DONE A FULL INVESTIGATION. IT'S NOT JUST ANALYSIS, BUT ANALYSIS THAT -- SO WHAT'S THE HARM

FROM REQUIRING THAT DISCLOSURE SINCE THERE'S NO NEED TO AWAIT THE 3-3 CONTENTIONS?

**MR. HSU-HOFFMAN:**  WE CAN -- WE DON'T SEE ANY HARM, YOUR HONOR, IN GOING AND PLEADING THAT WITH GREATER SPECIFICITY.  WE CAN PROVIDE MORE DETAIL.

WITH RESPECT TO MARKING, WE BELIEVE THAT THE BURDEN TO SHOW MARKING IS ON THE PLAINTIFF.  IN THIS CASE, THE MARKING BY THE PLAINTIFF WAS PLED ON INFORMATION AND BELIEF.

IN TERMS OF --

**THE COURT:**  BUT DO YOU HAVE SOME REASON TO BELIEVE THAT THERE WAS, INDEED, A FAILURE -- PUTTING ASIDE BURDEN, WHEN YOU ALLEGE THAT AS AN AFFIRMATIVE DEFENSE OR ASSERT THAT AS A DEFENSE, IF YOU HAVE SOME KNOWLEDGE OF THAT, WHY NOT DISCLOSE THAT?

**MR. HSU-HOFFMAN:**  CORRECT, YOUR HONOR. IN THE COMPLAINT THEY ALLEGE THAT THEY HAD LICENSEES AND IT WAS -- THEY PLED ON INFORMATION AND BELIEF THAT THEIR LICENSEES WERE MARKING WHAT THE PATENT NUMBERS THAT WERE, I GUESS, MAKING PRODUCTS PURSUANT TO PRIOR PATENT LICENSES ENTERED BY THIRD DIMENSION.

YOU KNOW, WE HAVE THIS TO BASICALLY PUT THAT TO THE TEST, SO THAT'S THE REASON FOR THE AFFIRMATIVE DEFENSE.

AND WITH RESPECT TO -- WITH RESPECT TO ADDING FURTHER DETAIL ON THAT, WE THINK -- WE CAN LOOK BACK, BUT WE BELIEVE THAT THE PLEADING BASED ON INFORMATION AND BELIEF JUST DIDN'T

ESTABLISH MARKING IN LIGHT OF THE --

THE COURT:  WELL --

MR. HSU-HOFFMAN:  -- ALLEGED LICENSEES.

THE COURT:  -- WHAT IS VALUABLE THERE IS THAT YOU WILL DISCLOSE THAT IT'S BASED ON INFORMATION AND BELIEF, AND YOU DON'T HAVE ANYTHING MORE SPECIFIC.  AND THEN, THEY CAN -- YOU KNOW, IF THAT PRECIPITATES A MOTION, YOU KNOW, WHATEVER. AT LEAST IT ADVANCES THE BALL.

I MEAN, I'M HEARING FROM MR. SHORE A WILLINGNESS TO DO AN EARLY DISCLOSURE OF HIS INFRINGEMENT CONTENTIONS.  AND I'M WONDERING, YOU KNOW, IF HE'S WILLING TO DO THAT WE CAN SKIP THROUGH A LOT OF THIS STUFF AND GET ALL THESE CONTENTIONS OUT ON THE TABLE.

MR. HSU-HOFFMAN:  YOUR HONOR, AT THE RULE 26 CONFERENCE, THE PLAINTIFFS ACTUALLY ASKED FOR A 30-DAY EXTENSION TO SERVE THEIR 3-1 DISCLOSURES.

HE DID MAKE -- HE DID ALLUDE TO A REFERENCE EARLIER THIS WEEK AT THE ADR CONFERENCE. BUT THAT SOUNDED LIKE THAT WAS IN THE CONTEXT OF SETTLEMENT NEGOTIATIONS.

THE COURT:  ALL RIGHT.  WELL, LET'S DO THIS --

MR. SHORE (BY PHONE):  YOUR HONOR, IF I CAN JUMP IN HERE. HERE'S THE THING.  MY COMPANY HAS BASICALLY TWO EMPLOYEES THAT KNOW ANYTHING.  THEY ARE IN ASIA FOR THE MONTH OF SEPTEMBER. SO THEY WILL BE BACK AFTER THE MONTH OF SEPTEMBER AND BE ABLE -- BUT THEY HAVE ALSO OFFERED -- I MEAN, WE'VE

REVERSE ENGINEERED SEVERAL OF THE PARTS, AND WE BELIEVE BASED UPON THE DATA SHEETS -- IN OTHER WORDS, YOU TAKE THE DATA SHEETS OF THESE PARTS.  AND YOU HAVE THE RDS ON THE ON RESISTANCE OF THE PARTS.  YOU HAVE THE BLOCKING VOLTAGE OF THE PARTS.

YOU GET THE DATA SHEETS.  YOU LOOK AT THE DATA SHEETS. YOU REVERSE ENGINEER A SELECTION OF THE PARTS, AND THEN YOU FIND OUT THEY INFRINGE.  AND THEN, YOU LOOK AT THE DATA SHEETS. THE OTHER PARTS HAVE THE EXACT SAME PERFORMANCE OR INCREDIBLY SIMILAR PERFORMANCE, AND IT'S CLEAR THAT THEY ARE MADE FROM THE SAME WAFERS.  THEY ARE MADE FROM THE SAME DIE.  THEY ARE JUST DIFFERENT PACKAGES.

SO ALL WE NEED -- ALL WE REALLY NEED TO GIVE THEM EVERYTHING AS FAR AS, YOU KNOW, CLAIM CHARTS, REVERSE ENGINEERING IS WE JUST NEED FOR THEM TO TELL US OF ALL THESE PART NUMBERS, WHICH ONES HAVE COMMON DIE?  AND, I MEAN, THEY CAN TELL US THAT TOMORROW.

THEY CAN SAY:

"ALL THESE PART NUMBERS ARE MADE FROM THIS DIE.  ALL OF THESE PART NUMBERS ARE MADE FROM THIS DIE."

AND WE FIND OUT THIS IS A FIVE, SEVEN OR NINE DIE CASE.

AND THEN, GIVE US ONE WAFER FROM EACH OF THOSE DIES. I IMAGINE WE HAVE ALREADY REVERSE ENGINEERED THE MAJORITY OF THEM.  BUT IF THERE'S ONE OR TWO MORE, WE'LL TAKE THOSE DIE. WE'LL REVERSE ENGINEER THEM.  WE WILL HAVE THIS THING DONE IN A

MONTH.

I MEAN, WE'RE ALL ABOUT TRYING TO BE EFFICIENT, AND WE'RE ALL ABOUT GIVING THEM ALL THE INFORMATION WE HAVE.

THE ENTIRE INDUSTRY IS ALREADY LICENSED TO THESE PATENTS. THEY ARE THE ONLY -- WELL, NOT THE ENTIRE INDUSTRY.  I'D SAY 85 PERCENT OF THE INDUSTRY IS ALREADY LICENSED TO THESE PATENTS.  I'VE LITIGATED THESE PATENTS FOUR TIMES.

SO IT'S NOT A HARD EXERCISE. THIS IS NOT GOING TO BE A CASE THAT'S DIFFICULT FOR THE COURT, UNLESS AOS WANTS TO MAKE IT DIFFICULT FOR THE COURT.  THIS IS GOING TO BE EASY.

**THE COURT:**  ALL RIGHT.  THAT GETS US INTO CASE MANAGEMENT ISSUES AND PERHAPS ADR DISCUSSIONS.  BUT I WANT TO LEAVE THIS MOTION THIS WAY.  MATTERS THAT TURN ON IN ANY WAY, IN A MEANINGFUL WAY TURN ON THE NATURE OF THE INFRINGEMENT CLAIMS, THE SPECIFICS OF THE INFRINGEMENT CLAIMS, TO THE EXTENT THOSE INFRINGEMENT CLAIMS HAVE NOT BEEN DISCLOSED AND WERE BASED RIGHT NOW WITH THE FORM 18 TYPE COMPLAINT, NEED NOT BE DISCLOSED WITH ANY DEGREE OF SPECIFICITY. NO GREATER SPECIFICITY THAN THE INFRINGEMENT CLAIMS THEMSELVES.

AND THAT'S A SYMMETRY KIND OF ANALYSIS AND A LOGICAL ANALYSIS.

TO THE EXTENT THAT THERE ARE AFFIRMATIVE DEFENSES OR COUNTERCLAIMS THAT DON'T HINGE ON, FOR INSTANCE, THE SCOPE OF INFRINGEMENT CLAIM, THOSE SHOULD BE DISCLOSED UNLESS THE DISCLOSURE IS GOING TO BE COVERED BY THE 3-3 INVALIDITY

CONTENTION PROCESS.

AND I THINK THAT WOULD EXCUSE DISCLOSURE. THAT MEANS MATTERS THAT DON'T HINGE ON INFRINGEMENT, THE NATURE OF THE INFRINGEMENT CLAIMS AND MATTERS THAT ARE NOT GOING TO BE COVERED BY THE 3-3 INVALIDITY CONTENTIONS SHOULD BE DISCLOSED WITH GREATER SPECIFICITY.

AND IT SOUNDS TO ME LIKE, JUST OFFHAND, SOMETHING LIKE LACHES, EQUITABLE ESTOPPEL, WHATEVER THAT IS. I'M NOT SURE ABOUT PROSECUTORIAL ESTOPPEL OR LACHES.  BUT WHAT I WANT YOU TO DO IS TO SEE IF YOU CAN MEET AND CONFER WITH THOSE GUIDELINES AND THAT RULING FROM ME THUS FAR, BECAUSE YOU KNOW BETTER THAN I AT THIS POINT WHAT MIGHT BE COVERED. AND SEE IF YOU CAN REACH AN UNDERSTANDING ON THAT.

AND IF THERE'S STILL A DISPUTE UNDER THE GUIDELINES I'VE JUST SET FORTH, THEN SEND ME IN THE NEXT WEEK OR TWO A JOINT LETTER SAYING:

"WE'VE GOT A DISPUTE OVER THE FOLLOWING AFFIRMATIVE DEFENSES," WHICH WHETHER THEY FALL INTO THE DISCLOSURE CATEGORY OR NOT.

BUT THOSE ARE THE GROUND RULES.  SO I AM GIVING SOME DEFERENCE TO OUR LOCAL RULES AND THE PROCESS BY ACKNOWLEDGING 3-3 AS A MECHANISM FOR SOME DISCLOSURE.  AND I'M ALSO ACKNOWLEDGING THE SYMMETRY AND WHAT'S GOOD FOR THE GOOSE IS GOOD FOR THE GANDER ON THE INFRINGEMENT QUESTION.

SO I DO SUSPECT THAT THERE ARE CERTAIN AFFIRMATIVE

DEFENSES THAT DO NOT FALL INTO EITHER OF THOSE, AND THEY NEED TO BE DISCLOSED.

MR. HSU-HOFFMAN:  THANK YOU, YOUR HONOR.

THE COURT:  OF COURSE, YOU CAN ALSO STIPULATE IN THE PROCESS TO MOVE THIS THING FORWARD WITHOUT AWAITING THE NORMAL PROCESSES AND TRY TO SHORTCUT THIS, PERHAPS AS MR. SHORE WAS SUGGESTING.  BUT I'M NOT GOING TO ORDER THAT AT THIS POINT. OKAY?

MR. HSU-HOFFMAN:  THANK YOU, YOUR HONOR.

THE COURT:  SO IF THERE'S A PROBLEM, I ASSUME I'LL HEAR FROM YOU OVER THE NEXT WEEK OR SO, WITHIN THE NEXT SEVEN DAYS BY JOINT LETTER.

MR. SHORE (BY PHONE):  I WOULD BE DISAPPOINTED IF YOU HEARD FROM US, YOUR HONOR.

THE COURT:  I WOULD BE, TOO.

MR. HSU-HOFFMAN:  WE'LL DO OUR BEST TO WORK IT OUT.

THE COURT:  ALL RIGHT.  THANK YOU.

QUICKLY, WITH RESPECT TO CASE MANAGEMENT THEN, I GUESS THERE IS A -- THERE'S SOME MATTERS WITH RESPECT TO A POTENTIAL PROTECTIVE ORDER THAT NEEDS TO BE -- YOU ARE STILL NEGOTIATING WITH RESPECT TO MR. SHORE'S ACCESS?  IS THAT AN ISSUE STILL?

MR. HSU-HOFFMAN:  YES, YOUR HONOR. WE INTEND TO BRING THIS TO THE COURT'S ATTENTION BY MOTION NEXT WEEK. BUT THE THIRD DIMENSION PLAINTIFF IS A THREE-PERSON COMPANY FROM WHAT WE UNDERSTAND.

MR. SHORE IS ONE OF THOSE PEOPLE. AND IN A PAST CASE INVOLVING FAIRCHILD THERE WAS A MAGISTRATE JUDGE OUT IN MAINE WHO FOUND THAT HE WAS A COMPETITIVE DECISION-MAKER FOR THIRD DIMENSION WHOSE BUSINESS IS PATENT LICENSING AND ENFORCEMENT.

IN THAT CASE THEY CONSIDERED HIS -- ESSENTIALLY HIS CLOSE ROLE WITH THIRD DIMENSION IN NEGOTIATING SETTLEMENT -- NEGOTIATING A PATENT SETTLEMENT AGREEMENT WITH FAIRCHILD.

IN ADDITION IN THAT CASE MR. SHORE, ONCE HE OBTAINED FAIRCHILD'S CONFIDENTIAL INFORMATION, WENT AND SHOPPED HIS KNOWLEDGE OF FAIRCHILD'S PRODUCTS TO ANOTHER COMPANY.

**THE COURT:** ALL RIGHT. WELL, I DON'T NEED TO GET INTO THAT. I'M NOT GOING TO RESOLVE THAT RIGHT NOW.

**MR. HSU-HOFFMAN:** ABSOLUTELY, YOUR HONOR.

**THE COURT:** YOU CAN BRING YOUR MOTION. MY ONLY QUESTION IS WHETHER THERE'S ANY CHANCE THAT THIS WOULD BE RESOLVED BY WAY OF AGREEMENT. AND IT SOUNDS LIKE THIS WILL HAVE TO RESOLVE BY MOTION.

**MR. HSU-HOFFMAN:** WE DISCUSSED IT.

**MR. SHORE (BY PHONE):** THERE'S LITERALLY NOTHING HE SAID THAT IS TRUE.

**THE COURT:** THAT'S WHY I'M NOT GOING TO GET INTO IT RIGHT NOW. WE'LL DEAL WITH THAT WHEN NECESSARY.

I'M GOING TO ADOPT THOSE GUIDELINES, THOSE DISCOVERY GUIDELINES THAT YOU'VE AGREED UPON HERE LIKE IN PARAGRAPH 14.

AND I WILL -- WITH RESPECT TO THE TIMETABLE FOR THE

DISCLOSURES, IT SOUNDS LIKE -- ACTUALLY, NOW I'M A BIT CONFUSED BECAUSE WITH RESPECT TO INFRINGEMENT CONTENTIONS DEFENDANT'S PROPOSAL IS SEPTEMBER 14 AND -- OH, I'M SORRY.  RIGHT.

SO PLAINTIFF WANTS UNTIL OCTOBER BECAUSE OF THE ISSUE YOU JUST RAISED, MR. SHORE, ABOUT CERTAIN PEOPLE BEING UNAVAILABLE; IS THAT RIGHT?

**MR. SHORE (BY PHONE):**  YES.  MR. ANDERSON, THE CEO OF THE COMPANY IS IN ASIA FOR THE ENTIRE MONTH OF SEPTEMBER. AND HE IS A PH.D. ELECTRICAL ENGINEER, AND HE'S THE ONE WHO HAS TO APPROVE OF AND SIGN OFF ON ALL THE INFRINGEMENT CONTENTIONS AND EVERYTHING OF THAT TYPE.

HE'S ALSO -- THE DOCUMENTS OF THE COMPANY ARE ALSO IN ARIZONA, IN PHOENIX, ARIZONA.  AND HE'S NOT THERE TO GATHER THEM AND PUT THEM TOGETHER AND HAVE THEM READY TO PRODUCE AND REVIEW THEM.

AND SINCE, YOU KNOW, I DON'T WANT TO HAVE ANYTHING TO DO WITH GATHERING DOCUMENTS OF 3D SINCE OF THE ALLEGATIONS RELATED TO THE PROTECTIVE ORDER, I'M GOING TO HAVE MR. ANDERSON MAKE SURE HE DOES EVERYTHING, SO --

**THE COURT:**  ALL RIGHT. THEN, I'M GOING TO GO AHEAD AND ADOPT THE PROPOSAL THAT STARTS WITH THE LATER DATES, WHICH IS STARTING WITH OCTOBER ON THE INFRINGEMENT CONTENTIONS LEADING TO THE LAST BRIEF ON THE CLAIM CONSTRUCTION IN APRIL.

AND I WILL -- WELL, LET'S SET A CLAIM CONSTRUCTION DATE, BETTY. LET'S HOLD THE DATE NOW.

HOW LONG DO YOU THINK THAT HEARING WILL TAKE?

**MR. SHORE (BY PHONE):**  I WOULD THINK ONE DAY, YOUR HONOR, DEPENDING ON HOW MANY PATENTS OR HOW MANY TERMS IN THE PATENT. AT LOT OF THESE PATENTS HAVE COMMON TERMS.

**THE COURT:**  YES.

**MR. SHORE (BY PHONE):**  SO I DON'T THINK THERE'S GOING TO BE AS MANY TERMS AS YOU THINK BASED ON THE NUMBER OF PATENTS.  BUT I WOULD THINK -- IT DEPENDS ALSO ON -- WELL, I MEAN, OBVIOUSLY IT DEPENDS ON HOW MANY TERMS THEY PUT AT ISSUE WE DON'T EXPECT IT TO BE MORE THAN TEN TERMS AT ISSUE.

**THE COURT:**  GOOD, BECAUSE THE GENERAL -- THAT'S OUR DEFAULT NUMBER HERE.

**MR. HSU-HOFFMAN:**  YOUR HONOR, WE JUST WOULD RESERVE THE RIGHT.  WE HAVEN'T SEEN THEIR INFRINGEMENT CONTENTIONS. JUST RESERVE THE RIGHT TO UPDATE THAT AT A LATER TIME.

**THE COURT:**  I UNDERSTAND THAT.  I'M JUST TRYING TO GET A SENSE FOR SCHEDULING PURPOSES.

SO SOMETHING IN MAY, BETTY.  MAYBE THE SECOND WEEK OF MAY. ARE WE AVAILABLE?

**MR. SHORE (BY PHONE):**  I WOULD JUST ASK THAT WE AVOID MAY 6 AND MAY 18TH.  MY WIFE'S BIRTHDAY AND MY WEDDING ANNIVERSARY.  OTHER THAN THAT, FIRE AWAY.

**THE COURT:**  OKAY.  DO WE HAVE A DAY IN THERE SOMEWHERE?

**THE CLERK:**  MAY 20TH AND 21ST.

**THE COURT:**  OKAY.  RIGHT NOW WE'VE GOT TWO HALF DAYS. SO I'M GOING TO SET IT FOR THE 20TH AND 21ST.  IF THAT CLEARS WE'LL JUST DO THAT IN ONE FULL DAY.  BUT WHY DON'T YOU PENCIL IN THOSE TWO DATES.

AND THAT'S IN THE AFTERNOON, BETTY?

**THE CLERK:**  2:30 IN THE AFTERNOON.

**THE COURT:**  BECAUSE WE HAVE TRIAL IN THE MORNING.

**THE CLERK:**  2:30.

**THE COURT:**  AND THEN, THE TUTORIAL WHY DON'T WE DO THAT IN ADVANCE, SUFFICIENTLY IN ADVANCE.  AT LEAST A WEEK IN ADVANCE, IF NOT TWO WEEKS.

**MR. SHORE (BY PHONE):**  THE TUTORIAL, YOUR HONOR, SHOULDN'T TAKE MORE THAN NINETY MINUTES.

**THE CLERK:**  MAY 13TH.  HALF DAY, AGAIN, 2:30.

**THE COURT:**  HOW ABOUT THE WEEK BEFORE THAT?  GIVE US TWO WEEKS.

**THE CLERK:**  ALL RIGHT.  MAY 6TH.

**THE COURT:**  NO, WAIT.  THAT'S WHEN HE'S NOT AVAILABLE.

**THE CLERK:**  OH.  MAY NINTH, A THURSDAY, AT 2:30.

**THE COURT:**  ALL RIGHT.  MAY NINTH AT 2:30 FOR TUTORIAL.  20TH AND THE 21ST FOR A CLAIM CONSTRUCTION HEARING.

AND WITH RESPECT TO ADR IT SOUNDS LIKE YOU ALL AGREE THAT TO UTILIZE MEDIATION THROUGH OUR COURT PROGRAM.  BUT AFTER PLAINTIFF SERVES ITS INFRINGEMENT CONTENTIONS.  IS THAT MY

UNDERSTANDING?

**MR. HSU-HOFFMAN:**  THAT IS CORRECT.  THE PARTIES AGREE TO 60 DAYS THEREAFTER.

**THE COURT:**  ALL RIGHT.  AND I WOULD ENCOURAGE YOU TO MEET AND CONFER TO SEE WHETHER THERE IS A WAY TO SORT OF SPEED UP THIS DISCLOSURE PROCESS.

MAYBE AS PART OF THIS DISCUSSION ABOUT DISCLOSING THE INVALIDITY DEFENSES, WHETHER THERE MIGHT BE SOME PROCESS TO EXPEDITE THAT.

BUT I'M NOT GOING TO IMPOSE ANYTHING.  I'LL LEAVE IT UP TO YOU.

**MR. HSU-HOFFMAN:**  YES, YOUR HONOR.

**THE COURT:**  OKAY.

**MR. HSU-HOFFMAN:**  ONE LAST THING WE HAD PROPOSED THAT THE COURT ADOPT THE MODEL DISCOVERY ORDER THAT'S BEEN APPROVED BY THE ADVISORY COUNSEL.

WE CAN SUBMIT A FORM ORDER. I DON'T KNOW IF THIRD DIMENSION HAS ANY OBJECTION TO IT.

**THE COURT:**  ANY OBJECTION TO THE DISCOVERY --

**MR. SHORE (BY PHONE):**  I WILL LEAVE THAT TO JILL, MS. KOPEIKIN, BECAUSE I HAVE NO IDEA WHAT THAT IS.

**MS. KOPEIKIN:**   YES, I THINK WE HAD DISCUSSED, COUNSEL, WE WERE GOING TO CONFER ABOUT THAT, AND I THINK THAT'S APPROPRIATE.

WE WILL RESPOND BACK TO THE COURT.

WE'RE NOT IN A POSITION TO AGREE TO IT AT THIS POINT.

**THE COURT:** ALL RIGHT.

WHY DON'T YOU LOOK AT THAT AND LET ME KNOW IF YOU AGREE. AND IF SO, SUBMIT A FORM OF ORDER ON THAT, AS WELL.

AND IF YOU DON'T AGREE, JUST BRIEFLY, VERY BRIEFLY, DESCRIBE YOUR RESPECTIVE POSITIONS ON THAT.

**MR. HSU-HOFFMAN:** YES, YOUR HONOR.

**THE COURT:** OKAY?

**MR. HSU-HOFFMAN:** THANK YOU.

**THE COURT:** AND WE SHOULD GO AHEAD AND SET A FURTHER STATUS CONFERENCE OUT PERHAPS IN -- WELL, LET'S SEE.  THINKING ABOUT MEDIATION, 60 DAYS TO THE INFRINGEMENT.  SO THAT WILL BE DONE IN OCTOBER.

SO MAYBE EARLY NOVEMBER?

**THE CLERK:** NOVEMBER NINTH AT 10:30.

**THE COURT:** FOR A STATUS.

**MR. SHORE (BY PHONE):** EARLY NOVEMBER IS FINE WITH US, WITH THE PLAINTIFF.

**THE COURT:** ALL RIGHT.  GREAT.

**MR. HSU-HOFFMAN:** THANK YOU.

**THE COURT:** AND WE'LL SEE YOU THEN.

**MR. SHORE (BY PHONE):** THANK YOU, YOUR HONOR.

**THE COURT:** GREAT.

**MR. SHORE (BY PHONE):** THANK YOU FOR YOUR TIME, JUDGE.

**THE COURT:**  ALL RIGHT.

THANK YOU.

(THEREUPON, THIS HEARING WAS CONCLUDED.)

STENOGRAPHY CERTIFICATION

"I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER."
          /S/ KATHERINE WYATT
          DATE SEPTEMBER 14, 2012
          KATHERINE WYATT

KATHERINE WYATT, OFFICIAL REPORTER, RPR, RMR   925-212-5224